IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CONSUELA BINGHAM, STEVE BINGHAM,
AND BOBBY JOENATHAN MARSHALL BINGHAM,
A MINOR BY AND THROUGH HIS PARENTS AND
NEXT FRIENDS CONSUELA AND STEVE BINGHAM                    PLAINTIFFS

VS.                                          CIVIL ACTION NO.: 1:05CV220-D-D

WEBSTER COUNTY, MISSISSIPPI;
WEBSTER COUNTY JAIL; DEPUTY SHERIFF
CALVIN ROBINSON, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY; SHERIFF REUBEN
MCCLUSKEY, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; THE WEBSTER COUNTY SHERIFF'S
DEPARTMENT; THE UNIDENTIFIED JOHN DOE DEFENDANTS
1-10, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
THE CITY OF EUPORA, MISSISSIPPI; UNIDENTIFIED
JOHN DOE DEFENDANTS 11-20, IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES                                         DEFENDANTS

## OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendant City of Eupora and Defendants Webster County[1] have each filed motions seeking summary judgment in the above-captioned action.[2] The Court has reviewed all pleadings and records filed in conjunction with the Motions and is ready to rule.

**Facts**

In September, 2003, Steve and Consuela Bingham's six children were removed from their

---

[1] Defendants Webster County, Webster County Jail, Webster County Sheriff's Department, Sheriff Reuben McCluskey, and Deputy Sheriff Calvin Robinson, both individually and in their official capacities, moved for summary judgment as "Defendants."

[2] Docket entries no. 80 and no. 83, respectively.

1

custody by the Webster County Department of Human Services, and Consuela and Steve Bingham were charged with child neglect.[3]  Subsequently, the Binghams pled guilty to "leaving child unattended," and Judge Buchanan Meek awarded custody of the children to Mrs. Mary Simmons, Steve Bingham's sister by adoption.[4]  At that time, the Binghams were ordered to pay child support.  In June of 2004, on a review before Judge Meek, the Binghams were found to be in contempt of court for failing to pay the ordered child support and were taken to the Webster County Jail.  Ms. Bingham states Deputy Sheriff Calvin Robinson told her she could not bond out of jail, but that she had to serve out a three week period of incarceration.  On July 4, 2004, Consuela Bingham states she telephoned Judge Meek who informed her she could bond out if he ruled so during court proceedings. Consuela Bingham alleges that after County officials knew she had called Judge Meek, her telephone privileges were denied.  Consuela Bingham contends that Deputy Sheriff Calvin Robinson was upset at her for not paying his mother child support, and that he used his position to punish her while she was imprisoned at the jail.  On July 10, 2004, after approximately serving two weeks in jail, Consuela Bingham fell in an unlit shower and began experiencing vaginal bleeding several hours later.  Consuela was five months pregnant at the time.  Consuela Bingham contends that she repeatedly informed jail employees that she needed medical attention, but that her requests were ignored until the evening hours of July 11, 2004, when she was released from jail by Webster County Sheriff Reuben McCluskey.  Mrs.

---

[3] Plaintiffs assert that this incident is relevant to the instant proceedings and began a denial of due process, which is disputed by Defendants.  The Court includes the recitation of events only for purposes of factual completeness.

[4] Steve Bingham was raised by his grandmother, which is Mary Simmons' mother.  Mary Simmons is the mother of Webster County Deputy Sheriff, Calvin Robinson, who is named in both his individual and official capacity as a defendant in the instant suit.

2

Bingham maintains that she suffered injury and damages as a result of the fall and subsequent actions of the Defendants, and she initially alleged her child was later born with permanent injuries as a result of the fall and delay in medical attention.

Plaintiff Consuela Bingham maintains that she was subjected to unsafe conditions and denied medical care by reason of her race, and that the actions of the Defendants violated the United States Constitution and State law. Plaintiff Steve Bingham asserts that he suffered constitutional deprivations stemming from the denial of an opportunity to bond out of jail and for his wife's lack of medical care. State law negligence claims are brought on behalf of Bobby Joenathan Marshall Bingham, with whom Consuela Bingham was pregnant at the time the events giving rise to this lawsuit occurred.

Plaintiffs have brought the instant action against Webster County, Mississippi, the City of Eupora, Mississippi, and against Deputy Sheriff Calvin Robinson and Sheriff Reuben McCluskey, who are sued individually and in their official capacities.[5]

**Grounds for Defendants' Motions**

Defendant City of Eupora ["City"] seeks summary judgment as to Plaintiffs' claims on the ground that Plaintiffs were, during all of the events that allegedly occurred giving rise to this suit, arrestees and prisoners of Webster County. Defendants Deputy Calvin Robinson and Sheriff Reuben McCluskey seek summary judgment as to Plaintiffs' claims in their individual

---

[5] For purposes of clarity, the claims against the Webster County Sheriff's Department and the official capacity claims against Deputy Robinson and Sheriff McCluskey are essentially claims against Webster County and are addressed in the collective. The Webster County Jail is not a "person" within the meaning of 1983. *See Miley v. Jones County Jail*, 2007 WL 2159334, at * 8 (S.D. Miss. 2007). In the body of this opinion, the Court will refer to the "County" to address this collective group.

3

capacities on the grounds that (a) Plaintiffs have not alleged a prima facie case of liability against the Defendants on any claim, and (b) even if Plaintiffs can prove a violation of their constitutional rights, they cannot overcome Defendants' defense of qualified immunity.

Defendant Webster County ["County"] seeks summary judgment as to Plaintiffs' federal law claims on the ground that Plaintiffs have failed to identify any policy, custom, or practice of Webster County evidencing an objective deliberate indifference to their constitutional rights that was the moving force behind any constitutional violation the Plaintiffs allegedly suffered. (County MSJ 9). The County asserts that Plaintiffs' allegations amount to an "episodic act," which requires Plaintiffs to show that a County employee violated their constitutional rights with subjective deliberate indifference, and that the violation was the result of a policy or custom adopted and/or maintained with objective deliberate indifference. (County MSJ Brief 12). The County also seeks summary judgment as to all of Plaintiffs' State law claims on the basis of the Mississippi Tort Claims Act and sovereign immunity.

Following the Defendants' motions for summary judgment, Plaintiffs filed a response addressing three claims: (1) the denial of medical care; (2) the denial of opportunity to post bond; and (3) the denial of due process. Each Defendant filed a motion in rebuttal to the response. Defendant City reiterates its contention that it is entitled to summary judgment as all acts or omissions complained of involved Defendant County. Defendant County asserts it is entitled to summary judgment as to all claims against it as Plaintiffs failed to demonstrate the existence of any genuine issue of material fact as to any of their claims.

## **Summary Judgment Standard**

The summary judgment movant bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *See Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to show by specific facts that there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. at 2553. Entry of summary judgment is mandated against a party failing to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. An issue is "genuine" if the evidence is such that a jury could reasonably return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The motion for summary judgment thus allows the Court to dispose of claims that do not have factual support. *See Celotex*, 477 U.S. at 323-324, 106 S.Ct. at 2553.

The party who is opposing a motion for summary judgment "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Court must avoid credibility determinations and weighing of the evidence, as these are functions for the trier of fact. *See Reeves v. Sanderson Plumbing Prods. Inc*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). "However, the court will assume that the movant's facts as claimed and supported by admissible evidence are admitted to exist without controversy, unless controverted in an opposing statement of genuine issues which is supported by proper summary judgment evidence." *Andrews v. Texas Park & Wildlife Dept.*, 196 F.Supp.2d 424, 426 (E.D. Tex. 2001).

## **Liability**

In order for a municipality to be liable under § 1983, Plaintiffs must demonstrate: (1) an

official policy or custom (2) of which the policy maker may be charged with knowledge (3) that is the moving force behind a constitutional violation. *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Plaintiffs bring the instant suit pursuant to 42 U.S.C. § 1983, alleging that Defendants' conduct violated their rights under the Fifth, Eighth, Eleventh, and Fourteenth Amendments to the United States Constitution and corresponding State law. As the claims against the Defendants in their official capacities are the equivalent of Plaintiffs naming the entity itself as the Defendant, these claims are evaluated as claims against the entity itself. *See Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).

### Defendant City of Eupora

The City asserts that it has no involvement in any events giving rise to the instant suit and all claims against it should be dismissed. The City of Eupora is named a defendant in this cause, apparently due to Steve and Consuela's belief that they were City arrestees at the time the events giving rise to this lawsuit occurred. Consuela testified that when she contacted Sheriff McCluskey to inquire about bail, she was told that the City was responsible for the arrest. (C. Bingham Dep. 56). Steve Bingham testified that he was arrested by the City. (S. Bingham Dep. 82-83, 93). The evidence supplied to the Court demonstrates that Plaintiffs were arrested pursuant to an order of a Webster County judge, transported to jail by Webster County Sheriff's Department employees, housed at the Webster County Jail, and under the care and control of the County throughout the entirety of their jail stay. (*See* City MSJ Brief, Jail Docket, Ex. E; Booking Report, City MSJ Brief, Ex. F; C. Bingham Dep. 115; S. Bingham Dep. 93). Consuela Bingham testified that she did not think the City even knew of any of her complaints. (C. Bingham Dep. 148-50). Moreover, the Sheriff of Webster County is responsible for all prisoners

6

housed at the jail. (*See* City MSJ Brief, Ex. J).

As Plaintiffs have failed to demonstrate that the City had any involvement in any of the alleged acts or omissions giving rise to this lawsuit, there is no genuine issue of material fact as to the City's possible liability regarding any of Plaintiffs' claims. The municipal defendants are entitled to summary judgment on all of the claims asserted against them in the complaint.

**Qualified Immunity**

Deputy Sheriff Calvin Robinson and Sheriff Reuben McCluskey have each been sued in their individual capacities, and each has asserted a defense of qualified immunity. A defendant is entitled to qualified immunity when the actions of the defendant were objectively reasonable, notwithstanding whether a plaintiff's constitutional rights have been violated. *See, e.g., Neeren v. Livingston Police Department*, 86 F.3d 469, 473 (5th Cir. 1996). Governmental officials performing discretionary duties are shielded against liability by the doctrine of qualified immunity provided that "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In order to pierce a qualified immunity defense, a plaintiff must demonstrate that the conduct at issue was a violation of clearly established law. *Id.* at 346 n.14.

**Conditions of Confinement**

Plaintiffs' complaint alleges that the conditions of confinement were unconstitutional, inasmuch as Defendants failed to provide a properly lit shower area or otherwise make the environment safe, in violation of the Eighth Amendment. (Complaint 7, ¶¶ 35-36). The Due Process Clause provides a pretrial detainee with a constitutional guarantee that he may not be

7

subjected to conditions imposed for the purpose of punishment, and the purpose may be inferred by determining whether the condition is reasonably related to a legitimate governmental objective. *See Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).[6] The County asserts that the evidence demonstrates at most that a light was temporarily out, while others in the area remained operable. The County suggests this temporarily light failure does not factually support a claim of constitutional magnitude.

A June 21, 2004, Grand Jury Report indicates that the light fixtures in the shower area needed to be replaced. (County MSJ Brief, Ex. M). The April 21, 2004, Bureau of Building Grounds and Real Property Management Report indicated no lighting problems in the jail, and it noted that all areas of the jail were freshly painted with new light fixtures. (County MSJ Brief, Ex. L). Defendants assert that the Grand Jury Report would have indicated a problem with the lighting if one were present, but it merely indicated that the fixtures were inadequate. (County MSJ Brief 14). Defendants assert that Conseula Bingham was in jail for two weeks prior to July 10, 2004, such that she should have been on notice of the lighting conditions. The County contends that the standard of deliberate indifference is not met under these facts, as required in order to defeat summary judgment. Plaintiffs have failed to come forward with any facts in opposition to the County's assertions.

Plaintiffs' claim is, at best, an allegation of negligence that is not actionable in a § 1983

---

[6] The Court expresses no opinion as to whether Plaintiffs were pretrial detainees or convicted inmates but addresses the conditions of confinement claim in the context briefed by Defendant County. The Court notes that, however, that the "pretrial detainee" standard offers more protections than the "convicted inmate" standard, and thus, the Court's conclusion would not be altered by examination under the less protective standard.

suit. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Defendants are entitled to summary judgment on this claim.

### Racial Discrimination

Plaintiff Consuela Bingham asserts she was discriminated against because of her race by the City, in violation of Title VII and Section 1983. Plaintiff asserts a violation of equal protection in that another inmate, Carrie Martin, was provided medical care while housed at the Webster County Jail. In their Motion, the County asserts that Plaintiffs were at all times inmates and not employees of the jail, thereby precluding a cause of action pursuant to Title VII. The County also asserts that Plaintiffs have failed to make a cognizable equal protection claim, as there is no evidence to suggest disparate treatment. (County MSJ Brief 26). The County also asserts Plaintiff Consuela Bingham has admitted that she is not asserting a racial discrimination claim against the County. (County MSJ Brief 27-28).

The Equal Protection Clause of the Fourteenth Amendment protects a prisoner from purposeful racial discrimination. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *see also Williams v. Brarner*, 180 F.3d 699, 705 (5th Cir. 1999). The presented evidence is clear that Consuela Bingham believed she was mistreated as a result of familial discord, i.e., that Deputy Robinson's mother had custody of the children and was not properly paid child support. (C. Bingham Dep. 140). Moreover, Consuela stated she did not believe the County treated her any differently than anyone else on the basis of her race. (C. Bingham Dep. 114). Inasmuch as Carrie Martin was not an inmate of Webster County, and this Court has already determined the City had no responsibility in any of the acts or omissions Plaintiffs allege, the fact that she was provided medical treatment has no bearing on this case.

Moreover, as Plaintiffs are not asserting an employment claim, they have failed to state a cause of action pursuant to Title VII. *See, e.g., Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004). Defendants are entitled to summary judgment on this issue.

## Due Process Claim

Plaintiffs' assert a generalized claim that they were denied due process throughout their involvement with the Department of Human Services and subsequent court appearances beginning in September of 2003. (Plaintiffs' Response 2). Defendant Webster County asserts that the family's past history with the Department of Human Services is irrelevant to the instant claims. (County Reply 4).

A fair reading of the Complaint in this case does not reveal the basis of the allegations Plaintiffs make in their Response to the instant Motions. The Complaint raises claims stemming from the Plaintiffs' incarceration at the Webster County Jail in the months of June and July of 2004. It is not in dispute that Plaintiffs were ordered to pay child support, nor is it in dispute that Steve and Consuela Bingham were sentenced to jail by Judge Meek for being in contempt of that order. The Bingham's prior involvement with the Department of Human Services is not relevant to issues raised by the Complaint, and Defendants are entitled to summary judgment on this claim.

## Claims on Behalf of Bobby Joenathan Bingham

Plaintiffs allege that Defendants "were negligent in denying medical care, failing to provide a properly lit shower area and otherwise failing to provide a reasonably safe premises, and in denying or delaying bail, said negligence resulting in injuries and damages to Bobby Joenathan Marshall Bingham." (Complaint 8, ¶ 41).

Defendants assert that Plaintiffs have failed to produce any evidence that Bobby Joenathan Marshall Bingham suffered any deprivation of his constitutional rights or any legally cognizable harm. (County MSJ Brief 28-29). In their Response to the instant Motions, Plaintiffs fail to address Defendants' contentions or otherwise substantiate their claim.

In her deposition testimony, Consuela Bingham stated no claims were being pursued on Bobby Joenathan Marshall Bingham's behalf. (C. Bingham Dep. 103, 153). During Steve Bingham's deposition, Plaintiffs' counsel stated that claims for injuries to the Bingham's son were not being pursued. (S. Bingham Dep. 4-12). In an affidavit, Steve Bingham stated that it could not be proved that his minor son's birth defects were caused by Consuela Bingham's fall or the delay in medical care. (Plaintiffs' Response, Ex. 5, S. Bingham Aff., 6-7, ¶ 23). Plaintiffs' interrogatory responses also assert that Steve and Consuela Bingham "do not contend on behalf of Bobby Joenathan Marshall Bingham that he was injured in any way due to the actions and/or omissions of the Defendants." (County MSJ Brief 29, *also* Ex. C). As Plaintiffs do not allege that Bobby Joenathan Marshall Bingham suffered a substantial harm as a result of any actions or omissions of Defendants, Plaintiffs do not state a cognizable claim under § 1983. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). Defendants are entitled to summary judgment on the claims brought on behalf of Bobby Joenathan Marshall Bingham.

## Fifth and Eleventh Amendment Claims

Defendants seek summary judgment on the Fifth Amendment and Eleventh Amendment claims brought in the Complaint as a matter of law, as they are asserted to have no applicability. First, Defendants assert that the Eleventh Amendment, which generally provides sovereign immunity to state agencies in suits brought by individuals in federal court, has not been raised as

a defense. *See Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Second, no Defendant is a federal actor, and thus, the Fifth Amendment is inapplicable to any of Plaintiffs' claims. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). The Court determines Defendants are entitled to summary judgment on Plaintiffs' Fifth and Eleventh Amendment claims.

### **False Imprisonment or Wrongful Denial/Delay of Bail**

Plaintiffs assert their rights under the Eighth Amendment to the United States Constitution, the Mississippi Constitution, and the common law were violated by the Defendants' actions constituting false imprisonment and/or the wrongful denial or delay of bond. (Complaint 7-8). Plaintiffs assert that Webster County Sheriff's Department officials, despite having been informed by Judge Meek that bond was available, denied them the opportunity to post bond. Plaintiff Consuela Bingham contends that Deputy Calvin Robinson informed her she was to serve three weeks in jail "regardless" of bond availability. (Plaintiffs' Reply 15). Consuela Bingham testified that Deputy Robinson deliberately denied bond in order to punish the Binghams for not having paid his mother child support. (C. Bingham Dep. 53). Consuela stated that on or about July 4, 2004, she had a friend call Judge Meek on three-way calling, and Judge Meek informed her that she could bond out if he said as much in court. (C. Bingham Dep. 57). Consuela testified she asked Judge Meek to inform the Sheriff's Department that bond was possible, and that her phone privileges were subsequently cut off in retribution for having called Judge Meek. (C. Bingham Dep. 57-58).

Deputy Calvin Robinson, testifying in his individual capacity, stated he had no independent recollection of the issue of bond being raised at any time during Plaintiffs'

12

incarceration, and that the jail docket indicated Plaintiffs could have been released at any time upon the payment of bond. (C. Robinson Dep. 37-38, 56-57). Speaking on behalf of Webster County as its 30(b)(6) representative, Deputy Robinson stated Plaintiffs were never denied bond, and that they only needed to pay a cash bond amount to be released. (Webster Co. Dep. 38-39).

Defendant Webster County seeks summary judgment on this claim as a matter of law, as Plaintiffs were incarcerated through a valid judicial decree. (County MSJ Brief 23). Plaintiffs were jailed for failing to obey a court-ordered child support schedule. Steve Bingham's booking report, which Consuela Bingham testified was the same as hers, indicates the bond amount was "[t]o serve 3 weeks or until child support is paid." (County MSJ Brief, Booking Report of S. Bingham, Ex. E). Plaintiffs were incarcerated through judicial decree, and their claim for false imprisonment fails. *See Duckett v. Cedar Park*, 950 F.2d 272, 279 (5th Cir.1992).

Neither Plaintiffs nor Defendants appear to be aware of what sum of money was needed for the Binghams to be released from prison, regardless of whether the money was considered bond or back child support payments. The Court has been unable to locate any statement in the record that would indicate what "bond" amount was needed for Plaintiffs to be released from the Webster County Jail. However, the booking report would appear to indicate that Plaintiffs had to satisfy at least a portion of their owed payments in order to be released from jail. These facts indicate confusion, but the Court can not determine that the facts reflect deliberate indifference to the rights of Plaintiffs with regard to bond. Defendants are entitled to summary judgment on this issue.

**Denial of Medical Care & Cruel and Unusual Punishment**[7]

Plaintiffs assert that the prison officials' knowledge of her pregnancy, that she was bleeding and in pain, and then waiting 21 hours to act on that knowledge and releasing her without providing medical care constitutes deliberate indifference to her serious medical needs. (Complaint 6 ¶ 28). Plaintiffs also assert that Webster County Sheriff Department's failure to train its employees on how to handle medical care led to a violation of their constitutional rights. (Plaintiff's Response Brief 11-12).

The County seeks summary judgment, arguing that there was no "policy" or "custom" that led to the violation of Plaintiffs' constitutional rights. The County also argues that it had no knowledge of a substantial risk of harm to Consuela Bingham or her unborn child to which it acted or failed to act with deliberate indifference. (County MSJ Brief 14-15). The County additionally argues Consuela Bingham has not presented evidence of a specific suffered harm, aside from vaginal bleeding, and that no medical opinion on the issue of causation has been presented. (County MSJ Brief 16-17).

### A. The Individual Defendants: Qualified Immunity

A plaintiff seeking to prevail on an Eighth Amendment claim for the denial of medical care must allege facts demonstrating "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the

---

[7] The Court notes that the status of Consuela Bingham at the time of events giving rise to this lawsuit may be debatable, but it does not alter the Court's consideration of this issue as "[t]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

14

Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (internal citations omitted). Deliberate indifference is "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839-40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). In order for a governmental entity to be liable under 42 U.S.C. § 1983 for the denial and/or delay of medical care, Plaintiffs must allege facts which, if true, would establish that the government actor "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. The condition complained of "must be one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Hare v. City of Corinth*, 814 F.Supp. 1312, 1320 (N.D. Miss. 1993). The Court assumes that the repeated complaints of a pregnant woman who is bleeding vaginally is sufficiently serious as to meet this standard, and Consuela Bingham has alleged the violation of a right clearly established at the time of her incarceration.

Next, the Court must determine whether the actions of the officers were reasonable. Defendants are entitled to qualified immunity if, viewing the evidence in the light most favorable to Plaintiffs, reasonable officers could differ as to whether the conduct was lawful. *See, e.g., Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997).

### A.1. Deputy Sheriff Calvin Robinson

Consuela Bingham has alleged that Deputy Robinson ignored her pleas for help. (C. Bingham Dep. 42). Deputy Robinson testified that he knew Consuela Bingham was released from custody, but that he assumed that it was because she was pregnant. (County Dep. 11, 18-

15

19).  The Court, accepting as true the allegation that Deputy Sheriff Calvin Robinson deliberately ignored Consuela Bingham's complaints, must determine whether, under the facts of which Deputy Calvin Robinson was aware at the time, his action or inaction was objectively reasonable. *See Mangieri v. Clifton*, 29 F.3d 1012, 1017-18 (5th Cir. 1994).  Taking Consuela Bingham's factual allegations as true, she yelled at Deputy Robinson through her cell that she was hurting, and he "walked off and went the other way." (C. Bingham Dep. 42).  Consuela Bingham stated that Calvin Robinson would not speak to her because of the problems within the family. (C. Bingham Dep. 104).  Consuela alleges that she believes Deputy Robinson sent someone to check on her approximately half an hour after she saw him leaving the storage room. (C. Bingham Dep. 106).  Taking her allegations as true, Deputy Robinson: (1) ignored her complaints, or (2) heard her complaints and did not act on them for over half an hour.  The Court determines there are sufficient factual issues to preclude the grant of summary judgment on this issue, and Deputy Robinson is not entitled to qualified immunity on the claim of delay and/or denial of medical care.  *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) ("Rule 56 still has vitality in qualified immunity cases if [there are] underlying historical facts in dispute that are material to resolutions of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them.").

### A.2.  Sheriff Reuben McCluskey

The jail docket indicates Consuela Bingham was released for "medical reasons." (County MSJ Brief, Ex. D).  Consuela Bingham has alleged that Sheriff McCluskey was aware she was pregnant, aware of her pain, and that he denied her medical treatment.  County employees testified that it was never acceptable to release an inmate rather than provide him or her medical

16

attention. (C. Robinson Dep. 49; T. O'Bryant Dep. 12-13, 16-18). The Court determines that there are sufficient factual issues to preclude the grant of summary judgment as to Sheriff Reuben McCluskey on the ground of qualified immunity.

### B. The County

Plaintiffs' allegations are of an "episodic act," which requires a constitutional violation to have occurred with subjective deliberate indifference to Plaintiffs' rights. *See Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996). To hold the County accountable, Plaintiffs must demonstrate that the subjective act was the result of a policy or custom maintained with objective deliberate indifference. *Farmer,* 511 U.S. at 841, 114 S.Ct. at 1981. In order for Webster County to be liable under 42 U.S.C. § 1983, Plaintiffs must identify a policy tied to the deprivation of their constitutional rights. The Webster County Sheriff's Department official policy as to medical care, as cited in its policy manual, reads:

> Arrangements should be made for medical emergency assistance, either with the public health service, hospital, fire department, or a local physician. Prisoners removed from holding cells for transportation to medical facilities will have full restraints applied, except when the physical condition of a prisoner clearly makes such restraints impractical or impossible (e.g., slashed wrists or female in labor.

(Plaintiffs' Response, Webster Co. Sheriff's Dep't Policy Manual 15, Ex. 4 ).

In addition to the written policy of the Sheriff's Department, there exists a policy that an inmate needing medical care is provided medical care. (C. Robinson Dep. 17-19; T. O'Bryant Dep. 9); *see also Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc) (finding official policy could be persistent practice of officials or employees is so common as to constitute custom fairly representing municipal policy). Under this common-sense practice, the Sheriff is notified of the prisoner's medical need before services are provided, unless there is an emergency

17

situation that requires employees to seek medical attention for the prisoner immediately. In such cases, the Sheriff is notified as soon as possible thereafter. (C. Robinson Dep. 18-19). Deputy Calvin Robinson stated that it is never acceptable to release an inmate requesting medical care without first providing it. (C. Robinson Dep. 49).

Plaintiffs also allege that there was a failure to train and/or supervise employees that meet the standard for liability, as no specific training in handling medical needs or requests was provided by the County. (C. Robinson Dep. 20; T. O'Bryant Dep. 12-13, 16-18). Consuela Bingham has established that policy was not followed, that she was left bleeding and in pain as a result, and that several employees were aware of her complaints and failed to take any action. Regardless of whether the failure of the policy was through the supervision of employees or the decisions of the Sheriff himself as policy-maker, Consuela Bingham lay bleeding and in pain for over twenty hours before she was released on the street to seek her own medical care. *See City of Canton*, 489 U.S. 378, 387-88, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (basis of liability under circumstances of constitutional policy applied in unconstitutional manner is whether failure to train [or supervise] amounts to deliberate indifference). The Court finds that there are sufficient factual issues that are best decided by a jury with regard to the denial or medical care and the related failure to supervise, and summary judgment as to this claim is denied.

### D. Steve Bingham

Steve Bingham's claim for the denial of medical care for his wife does not allege a personal deprivation of a constitutional right. His claim for the denial of medical care is dismissed.

**State Law Claims**

To the extent Plaintiffs' Complaint alleges claims under State law, they are barred by the provisions of the Mississippi Tort Claims Act ["MTCA"], Miss. Code Ann. § 11-46-1, et. seq. Pursuant to the MTCA, a governmental entity and its employees are not liable for claims arising while the claimant was "an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or such other institution." Miss. Code Ann. § 11-46-9(1)(m). Plaintiffs were inmates at all times relevant to this case.[8] Therefore, Plaintiffs' claims pursuant to State law are dismissed.

**Conclusion**

Defendant City of Eupora's motion for summary judgment is **GRANTED** as to all claims. Defendant Webster County's motion for summary judgment is **GRANTED** as to Plaintiffs' claims of racial discrimination, Title VII violation, false imprisonment and/or the denial of bail, unconstitutional conditions, and all State law claims. Defendant Webster County's motion for summary judgment is **GRANTED** as to all claims brought by Steve Bingham and those brought on behalf of Bobby Joenathan Marshall Bingham. However, summary judgment is **DENIED** as to Consuela Bingham's claims for the denial of medical care and related failure to supervise in violation of the Eighth Amendment. These claims shall proceed against Webster County, as well as against Sheriff Reuben McCluskey and Deputy Sheriff Calvin Robinson. All other claims against Sheriff McCluksey and Deputy Sheriff

---

[8] The Court's conclusion is not altered if Plaintiffs were considered pre-trial detainees at the time of their incarceration. *See, e.g., Jones v. City of Jackson*, 203 F.3d 875, 881 (5th Cir. 2000).

19

Robinson in their individual capacities are dismissed. A separate order in accordance with this opinion shall issue this day.

**THIS** the 1st day of October, 2007.

/s/ Glen H. Davidson
**GLEN H. DAVIDSON
SENIOR U.S. DISTRICT JUDGE**